JjSTEVEN R. PLOTKIN, Judge.
Defendant, Freeman Decorating Co., appeals a judgment issued by a workers’ compensation judge (“WCJ”) in favor of plaintiff/claimant, Santos Rodriguez. For the reasons described below, we reverse. Facts
Mr. Rodriguez allegedly suffered injury as a result of his work activities with Freeman Decorating sometime during the day on December 3, 1998. Mr. Rodriguez, who had previously been employed in the Houston, Texas, area by a union organization that set up conventions, shows, and concerts, had done work for Freeman Decorating on different occasions since 1977. *519 Then, on November 3, 1998, Mr. Rodriguez applied for the job at Freeman Decorating in New Orleans; he actually started working at Freeman Decorating’s Elm-wood warehouse in Jefferson Parish on November 11, 1998. According to Mr. Rodriguez’s testimony, he and his girlfriend, Sue Wheelock, planned to move to the New Orleans area from the Houston area, and had located an apartment just days before his injury occurred.
Mr. Rodriguez testified that he worked from 7 a.m. to 5 p.m. on December 3, 1998, when one of his co-workers gave him a ride to his new apartment for the Rnight. Mr. Rodriguez stated that he performed a number of strenuous physical activities during his workday, including heavy lifting. At about 7 or 8 p.m., he said, he walked a half block to a pay telephone to call Ms. Wheelock, and noticed at some point during the call that his hand was shaking. However, he did not mention any injury to Ms. Wheelock during the 30-to 40-minute phone call. He returned to his apartment after talking with Ms. Wheelock, where he took a shower and went to bed.
Mr. Rodriguez stated that he did not notice any injury until approximately 3 a.m. the next morning, December 4, 1998, when he woke up with severe pain in his lower back extending down his right leg all the way to his right foot. According to Mr. Rodriguez’s testimony, the pain was so severe that he could not do anything but lie still, which resulted in some momentary lessening of pain until he tried to move again. He did not report to work on December 4, 1998, but managed to get to the pay telephone to call Ms. Wheelock and tell her about his injury at approximately 7 p.m. that day.
Ms. Wheelock testified that she reported Mr. Rodriguez’s injury to someone at Freeman Decorating. She then came to New Orleans, arriving early in the morning on December 5, 1998, and took Mr. Rodriguez back to the Houston area with her. Late that evening, Mr. Rodriguez was examined by A.G. Braddick, D.C., Ms. Wheelock’s chiropractor. Dr. Braddick initially diagnosed Mr. Rodriguez with “lower back and right leg pain causing cramping and severe pain with any type of physical activity.” From December 5, 1998 through July of 1999, Dr. Braddick saw Mr. Rodriguez regularly. Dr. Brad-dick stated in a July 30, 1999 letter that Mr. Rodriguez was “unable to work due to a spinal injury,” then stated in an October 13, 1999, letter that Mr. Rodriguez was totally disabled.
l3Mr. Rodriguez also consulted several other doctors during the year following his injury. On December 8, 1998, Mr. Rodriguez consulted Dr. Donnie Rinker at the request of Freeman Decorating for a physical examination and a drug test. X-rays ordered by Dr. Rinker showed no abnormality of the lumbar spine. On February 1, 1999, Mr. Rodriguez consulted Dr. James Perry, again at Freeman Decorating’s request. Dr. Perry stated his belief on the basis of a lumbar MRI that Mr. Rodriguez suffered a “right SI radiculopa-thy from a small herniated nucleus pulpo-sus at L5-S1,” making him unable to return to work; Dr. Perry also noted some degenerative disc disease. Dr. Perry recommended further diagnostic tests, including a myelogram and a myelogram-en-hanced CT scan.
On April 1, 1999, Mr. Rodriguez consulted Dr. R. Wayne Hurt, a neurologist, at the request of Dr. Braddick. Dr. Hurt noted that the report from the MRI scan indicated “a disc bulge and spur at L5-S1 and a small disc bulge at L4-5.” On April 9, 1999, Dr. Hurt stated the need for a lumbar myelogram and CT scan to determine a possible lumbar radiculopathy. *520 The report from a lumbar myelogram and CT scan post myelography performed on July 7, 1999, indicated three abnormalities: (1) “disc bulge at L5-S1 with a small right paracentral disc protrusion with mild mass effect upon the right SI root,” (2) “osteo-phyte formation in the left [illegible] without significant mass effect upon the nerves,” and (3) “generalized bulging at L4-5.” Finally, on November 12, 1999, Mr. Rodriguez consulted Dr. Thai Nguyen, who reviewed the lumbar MRI films and the myelogram post-CT. Dr. Nguyen stated his impression that Mr. Rodriguez suffered a “L4-5 and L5-S1 bulging disc with clinical right L5-S1 radiculopathy, probably secondary to work-related injury.”
|4Mr. Rodriguez’s claim for workers’ compensation benefits was investigated by Dawn Byrne of the Caldwell Group, Inc., Freeman Decorating’s workers’ compensation insurance carrier. Freeman Decorating initially paid Mr. Rodriguez temporary total disability (“TTD”) workers’ compensation benefits from December 5, 1998 through July 8, 1999. Ms. Byrne completed a “Stop Work Form” on July 12, 1999, which noted that Caldwell was “disputing compensability because further investigation indicates that employee did not have an accident within the course and scope of employment.” Following the termination of his workers’ compensation benefits, Mr. Rodriguez filed a claim with the Louisiana Office of Workers’ Compensation.
Following a trial on the matter, the WCJ found that Mr. Rodriguez sustained a compensable injury on December 3, 1998, and awarded Mr. Rodriguez temporary total disability workers’ compensation benefits from July 8, 1999 “continuing until such time he can again engage in gainful employment,” plus interest on past due payments. The WCJ found that Mr. Rodriguez was entitled to treatment with a neurosurgeon of his choice, and ordered Freeman Decorating to pay all outstanding and future medical bills. The WCJ further found that Freeman Decorating had not acted arbitrarily and capriciously in terminating Mr. Rodriguez’s benefits, and rejected Mr. Rodriguez’s claim for penalties and attorney fees. Finally, the WCJ found that Mr. Rodriguez was untruthful about a prior back injury, but that Freeman Decorating had failed to prove that the untruthfulness or misrepresentation was for the purpose of obtaining workers’ compensation benefits; therefore, the WCJ found that Mr. Rodriguez had not violated LSA-R.S. 23:1208.
| ¡¡Freeman Decorating appeals, assigning as error the following findings of the WCJ: (1) that Mr. Rodriguez carried his burden of proving that his injury was caused by a work-related accident, and (2) that Freeman Decorating failed to carry its burden of proving that Mr. Rodriguez violated LSA-R.S. 23:1208. Mr. Rodriguez filed a cross-appeal in this court, challenging the WCJ’s finding that Freeman Decorating was not arbitrary and capricious in terminating his benefits.
Proof of work-related accident causing injury
First, Freeman Decorating argues that the WCJ’s finding that Mr. Rodriguez carried his burden of proving that he suffered a work-related accident which caused his injury was manifestly erroneous. In support of its position, Freeman Decorating cites from the Louisiana Supreme Court’s case of Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992), which states, in pertinent part, as follows:
As a threshold requirement, a worker in a compensation action must establish “personal injury by accident arising out of and in the course of his employment.” LSA-R.S. 23:1031 (emphasis supplied). *521 The applicable statutory definition of “accident” is “an unexpected or unforeseen event happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury.” LSA-R.S. 23:1021(1)....
Louisiana courts consistently have interpreted the work-related accident requirement liberally. Williams v. Regional Transit Authority, 546 So.2d 150, 156 (La.1989). Indeed, it is well-settled in Louisiana that an “accident” exists when “heavy lifting or other strenuous efforts, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition.” Cutno v. Neeb Kearney & Co., 237 La. 828, 112 So.2d 628, 631 (1959); Nelson [v. Roadway Express, Inc., 588 So.2d 350 (1991)], supra (collecting cases). Moreover, Louisiana courts view the question of whether there was an accident from the workers’ perspective. Williams, supra.
Despite the liberal construction of the statute afforded the worker in a compensation action, the workers’ burden of proof is not relaxed. Prim v. City of Shreveport, 297 So.2d 421 (La.1974). Rather, as in other civil actions, the plaintiff-worker in a | (¡compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. Id.; Nelson, supra. A workers’ testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the workers’ version of the incident; and (2) the workers’ testimony is corroborated by the circumstances following the alleged incident. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979); Malone and Johnson, 13 Louisiana Civil Law Treatise, Workers’ Compensation, § 253 (2d Ed.1980). Corroboration of the workers’ testimony may be provided by the testimony of fellow workers, spouses or friends. Malone & Johnson, supra; Nelson, supra. Corroboration may also be provided by medical evidence. West, supra.
In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness’s uncontradicted testimony, although the witness is a party, absent “circumstances casting suspicion on the reliability of this testimony.” West, 371 So.2d at 1147; Holiday v. Borden Chemical, 508 So.2d 1381, 1383 (La.1987). The trial court’s determinations as to whether the workers’ testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. Gonzales v. Babco Farm, Inc., 535 So.2d 822, 824 (La.App. 2d Cir.), writ denied, 536 So.2d 1200 (La.1988) (collecting cases). Indeed, the manifest error/clearly wrong standard of appellate review applies in compensation actions even when the trial court’s decision is based solely upon written reports, records or depositions. Virgil v. American Guarantee and Liability Insurance Co., 507 So.2d 825 (La.1987).
Id. at 360-61. In Bruno, the Louisiana Supreme Court reinstated a trial court’s finding that the claimant had carried her burden of proving that her back injury was caused by a work-related accident, despite the fact that the claimant failed to report the alleged accident to her treating physician; failed to immediately file a report of the accident with her employer; failed to immediately file an accident report; and had a previous history of back problems. Id. The court found that the trial court had *522 not been manifestly erroneous in awarding the claimant workers’ compensation benefits, and reversed an appellate court decision to the contrary. Id.
In finding that Mr. Rodriguez met his burden of proving that his back injury was caused by a work-related accident in this case, the WCJ cited Robin v. Schwegmann Giant Supermarkets, Inc., 93-2310 (La.App. 1 Cir. 11/10/94), 646 So.2d 1030, in which the court stated, in pertinent part, as follows:
Therefore, we find no merit to Sehwegmann’s argument that Robin is excluded from coverage on the basis that her injury was a gradual progression of a pre-existing condition. Nor can we accept Schwegmann’s argument that Robin failed to prove an “event” marking the identification of her injury. The record contains ample evidence identifying the event which marks the identification of Robin’s injury, namely, the performance of her lifting duties in the deli on Friday, October 11, 1991. Robin testified that she experienced back pain throughout the time she was required to work alone, or understaffed, in the deli. However, she also testified that the back pain she experienced the night of October 11, 1991 was a different kind of pain than what she had felt before. This testimony is consistent with Dr. Kucharchuk’s summation that Robin was subjected to continuous “micro-trauma” in the performance of her duties in the deli which aggravated her pre-existing condition and cumulated in the ruptured disc. Given these circumstances, it is clear that the event which caused Robin’s injury was the lifting duties she performed in the deli at Schwegmann on Friday, October 11, 1991.
Id. at 6, 646 So.2d at 1034.
In support of its argument that Mr. Rodriguez failed to carry his burden of proof, Freeman Decorating cites this court’s decision in Matthews v. Taylor Temporary, Inc., 97-1718 (La.App. 4 Cir. 2/11/98), 707 So.2d 1021. In that case, this court affirmed a judgment denying a workers’ compensation claim, despite the claimant’s testimony that he felt his job duties in general, including lifting and twisting, caused him to develop pain, when two coworkers denied any knowledge of the claimant’s alleged accident. Id.
Our review of the record evidence in this case, in light of the principles articulated in the cases discussed above, convinces us that the WCJ was manifestly erroneous when she concluded that Mr. Rodriguez met his burden of proving that his low back injury and/or pain was caused by a work-related accident. In the instant case, the only record evidence that Mr. Rodriguez’s back injury and/or pain |swas caused by his work activities on December 3, 1998, was Mr. Rodriguez’s own testimony. As stated in Bruno, a workers’ testimony alone is sufficient to establish his burden of proof only if the following elements are satisfied: (1) “no other evidence discredits or casts serious doubt upon the workers’ version of the incident,” and (2) “the workers’ testimony is corroborated by the circumstance following the alleged accident.” Id. at 361.
In the instant case, those two elements were not satisfied, primarily because the record contains other evidence that “discredits or casts serious doubt upon the workers’ version of the incident.” Id. Dr. Braddick’s records of his treatment of Mr. Rodriguez indicate that he first treated Mr. Rodriguez on November 11, 1998, eight days after he applied for the job at Freeman Decorating and two days before he started work for Freeman Decorating. Dr. Braddick’s notes from that visit con *523 tain the following “Accident Description”: uVk months ago was carrying something and hopped off a truck and felt it.” Under “Symptoms,” Dr. Braddick wrote as follows: “lower back pain mov[ing] down rt. Leg to foot started a month and a half ago.” Dr. Braddick’s report from December 5, 1998, the first visit after Mr. Rodriguez’s alleged accident, states as follows under “Significant Past Medical History”: “I treated this pt. One time on 11/09/98 for lower back and right leg pain which he evidently recovered from, as I did not see this patient again until this injury.”
When confronted with this evidence at trial, Mr. Rodriguez insisted that Dr. Braddick never treated him for any type of back pain prior to December 5, 1998, when he first saw Dr. Braddick following his alleged injury at Freeman Decorating. However, Dr. Braddick’s notes concerning the November 9, 1998, visit describe the exact symptoms that Mr. Rodriguez claims to have suffered as a 19result of the work-related accident at Freeman Decorating. Moreover, those notes were made less than a month prior to his alleged work-related accident. Under the circumstances, Mr. Rodriguez testimony alone is insufficient to carry his burden of proof. Because the record contains no other evidence on that issue, the trial court was manifestly erroneous in finding that Mr. Rodriguez was entitled to workers’ compensation benefits. The judgment is therefore reversed.
Violation of LSA-R.S. 23:1208
Second, Freeman Decorating argues that the trial court was manifestly erroneous in finding that Mr. Rodriguez did not violate LSA-R.S. 23:1208. Under the provisions of that statute, a claimant forfeits his right to workers’ compensation benefits if the following elements are proven by the employer: (1) a false statement or representation, (2) willfully made, (3) for the purpose of obtaining or defeating any benefit or payment under the workers’ compensation law. Hernandez v. ESKCO, Inc., 2000-0174 (La.App. 4 Cir. 11/15/00), 773 So.2d 865, 867, writ denied, 2000-3430 (La.2/9/01), 785 So.2d 824. The WCJ in this case found that Mr. Rodriguez did make a false statement or misrepresentation concerning his previous injury, but that Freeman Decorating failed to prove that the false statement or misrepresentation was made for the purpose of obtaining compensation.
Freeman Decorating’s arguments on this issue are based on the notes regarding Mr. Rodriguez’s November 9, 1998, treatment with Dr. Braddick, indicating that Mr. Rodriguez suffered from the exact same symptoms prior to his alleged work-related injury. In brief,. Freeman Decorating notes the following times when Mr. Rodriguez failed to reveal the previous existence of his symptoms, |indespite being specifically questioned about prior similar injuries and pain: (1) medical evaluation with Dr. Rinker on December 8, 1998; (2) recorded statement on December 9, 1998; (3) medical evaluation with Dr. Perry on February 1, 1999; (4) medical evaluation with Dr. Hurt on April 1, 1999; (5) answers to interrogatories on May 23, 1999; (6) deposition on June 10, 1999, and (7) medical evaluation with Dr. Nguyen on November 12, 1999. Significantly, Mr. Rodriguez misrepresented the fact that he had suffered similar pain prior to his injury in sworn testimony on several occasions.
At trial, Mr. Rodriguez was questioned extensively on cross-examination concerning his prior treatment with Dr. Braddick. Mr. Rodriguez initially stated that he did not have a back injury when he went to see Dr. Braddick on November 9, 1998, but that he had some soreness and was “curious” about seeing a chiropractor. He indicated that he had simply forgotten about the visit with Dr. Braddick when questioned about prior injuries in all the *524 listed situations. Mr. Rodriguez stated that he did not know why Dr. Braddick described his “Symptoms” as he did.
Interpreting LSA-R.S. 23:1208 in Resweber v. Haroil Construction Co., 94-2708 (La.9/5/95), 660 So.2d 7, the Louisiana Supreme Court stated, in pertinent part, as follows: •
Section 1208 is clear and unambiguous and as such will be applied as written. La. Civ.Code art. 9; La. R.S. 1:4. Section 1208 clearly applies to any willful false statements or representations made “for the purpose of obtaining or defeating any benefit or payment.” Section 1208 has no language limiting it to only certain types of false statements, i.e., statements other than those relating to prior injuries. The legislature has imposed no notice requirement in Section 1208, apparently being of the opinion that any claimant should be on notice that false statements made willfully for the purpose of obtaining workers’ compensation benefits will not be tolerated and will result in the forfeiture of those benefits. The only requirements for forfeiture |nof benefits under Section 1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment.
Our conclusion is fui'ther buttressed by the legislative history of Section [ ] 1208.... The history of Section 1208 indicates a clear legislative intent to prevent and discourage fraud in relation to workers’ compensation claims, and Section 1208 should- not be subjected to a strained interpretation which would undercut that legislative intent. Prior to 1989, Section 1208 required a criminal conviction under its provisions before the employee forfeited his benefits. However, the legislature eliminated the necessity of a criminal conviction as a prerequisite for a claimant’s forfeiture of benefits by amending Section 1208 to require only a “violation” of the Section. 1989 La. Acts No. 454. Thus, the legislature chose to make it easier to establish grounds for a claimant’s forfeiture of benefits. H. Alton Johnson, Workers’ Compensation, Developments in the Law, 50 La. L.Rev. 391, 401 (1989). A 1992 amendment to Section 1208 added civil penalties to the criminal penalties and made clear that a hearing officer is to determine whether a claimant violated the section, Acts No. 763. See generally, Denis Paul Juge, Louisiana Workers’ Compensation § 6:3 (1995). The legislature has determined workers’ compensation fraud is a severe and growing problem and has continually amended Section 1208 to make it easier to enforce and to make the penalties stiffer. It is clear from the history of the statute that the legislature intended that any false statements or representations willfully made for the purpose of obtaining benefits would result in forfeiture of those benefits, and this legislative intent cannot be ignored.
Id. at 7-8, 660 So.2d at 12-13.
In the instant case, the WCJ improperly made a “strained interpretation which would undercut th[e] legislative intent” “to prevent and discourage fraud in relation to workers’ compensation claims.” Id. at 8, 660 So.2d at 13. As the WCJ found, Mr. Rodriguez unquestionably made a false statement or representation; that false statement or representation involved a visit to a doctor that occurred less than a month prior to the occurrence of the alleged accident in this case, indicating that he probably hadn’t forgotten it as he might have forgotten pain treated years before this alleged injury. Moreover, Mr. Rodriguez continued to make the false statement or misrepresentation, even when confronted with clear evidence that he |i?had told Dr. Braddick that he was suffering from the same symptoms he *525 claims were caused by his work-related accident at Freeman Decorating. Mr. Rodriguez even went so far as to suggest that the doctor must have fabricated that description of his symptoms, despite the fact it is virtually identical to his complaints less than a month later, a suggestion that defies reasonable belief. Moreover, the false statement or representation made by Mr. Rodriguez involved a issue critical to the determination of whether he was entitled to workers’ compensation benefits — i.e., whether he had a previous similar injury or pain.
The WCJ found that Freeman Decorating did not carry its burden of proving that the false statement or misrepresentation was made for the purpose of obtaining workers’ compensation benefits; however, it is difficult to imagine anything more Freeman Decorating might have done to prove its case. At trial, Freeman Decorating questioned Mr. Rodriguez concerning his previous medical history, then confronted him with Dr. Braddick’s November 9, 1998, notes. Freeman Decorating also questioned Mr. Rodriguez on this issue in his deposition and in interrogatories. Finally, Freeman Decorating pointed out at trial every instance in which Mr. Rodriguez had denied previous injury or treatment for low back pain, including all of the doctors’ notes. Freeman Decorating went to great lengths to carry its burden of proof. The trial court’s finding that Freeman Decorating failed to do so ignores the Supreme Court’s clear statement in Re-sweber that “the legislature chose to make it easier to establish grounds for a claimant’s forfeiture of benefits.” Id.
The WCJ did not address whether Mr. Rodriguez made his false statement or representation concerning his prior back pain and injury “willfully”; however, we have no trouble finding on the basis of the record evidence that Mr. Rodriguez |13willfully made a false statement or misrepresentation for the purpose of obtaining workers’ compensation benefits. Certainly Mr. Rodriguez, who continued to make the false statement or representation, did not offer any other explanation for his failure to disclose his previous back pain or injury. In fact, Mr. Rodriguez responded to the clear evidence that he had such a previous injury by continuing to deny its occurrence. Under the circumstances, Mr. Rodriguez has forfeited his right to workers’ compensation benefits under LSA-R.S. 23:1208.
Conclusion
For the forgoing reasons, the judgment of the WCJ awarding Mr. Rodriguez workers’ compensation benefits is reversed. Mr. Rodriguez’s appeal, challenging the WCJ’s finding that Freeman Decorating was not arbitrary and capricious in terminating his workers’ compensation benefits is now moot since we have found that Mr. Rodriguez forfeited all right to workers’ compensation benefits. Accordingly, we pretermit discussion of that issue.
REVERSED AND RENDERED.